UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

- against -

BRENT SOBERS,

        Defendant.
-------------------------------------------------------x

Memorandum & Order
17-CR-0681

GLASSER, Senior United States District Judge:

Before the Court is the Defendant's motion to suppress evidence of a firearm discovered on November 13, 2017 during his arrest for a misdemeanor violation. On March 2, 2018, the Court held an evidentiary hearing on the matter and requested post-hearing briefing, which both parties have filed. For the reasons stated below, the Defendant's motion is DENIED.

## BACKGROUND

On the afternoon of November 13, 2017, three NYPD officers stopped the Defendant inside the Cortelyou Road subway station in Brooklyn, New York. Suppression Hearing Transcript, March 2, 2018 ("Tr."), 12-14. One of the detectives observed the Defendant enter the station using a student metrocard, which bears distinctive marks differentiating it from other metrocards and also sets off a specific signal on a subway turnstile indicating that a student card has been used. Tr. 9:16-23, 12:1-4. The detective who witnessed Sobers enter the turnstile noticed that he appeared to be too old to be using a student metrocard, which is reserved for students in grades K-12. Tr. 12:21-24.

Since it is a misdemeanor to use another's student metrocard in New York, the officers decided to approach the Defendant. Tr. 12:25, 13:1-5, 13:12-14. The officers identified

themselves and displayed their badges and then asked the Defendant for his identification and his metrocard. The Defendant produced his identification, informed the officers that he was 24 years old and that he had used his girlfriend's student metrocard. Tr. 14:18-23.

The officers proceeded to check the Defendant's name against an NYPD database to determine whether he was a first time offender, who would be eligible for a summons, or whether he was a transit recidivist, which would require an arrest. Tr. 14:24-25, 15:1-8, 39:11-24. The database revealed that he was a transit recidivist. Tr. 15:18-22, 24:24-25, 25:1-7, 31:19-22. The officers asked the Defendant to turn around while one of the officers removed the Defendant's backpack, then two of the officers placed the Defendant in handcuffs. Tr. 16:1-2, 25:20-25, 26:1. One of the officers conducted a brief search of the Defendant's person and discovered some marijuana. Tr. 16:3-8.

At around the same time, another officer conducted a search of the Defendant's backpack. Tr. 16:14-19. During that search, the officer discovered a loaded firearm inside a small pocket of the backpack. Tr. 16:20-21, 17:2-11, 18:7-12, Gov't Ex. 4. After the officers secured the defendant and the firearm, they brought the defendant back to a police precinct. Tr. 18:13-20. There, pursuant to standard NYPD policy, the Defendant's belongings were inventoried and vouchered. Tr. 18:25, 19:1-7.

At issue here is whether the evidence that the Defendant possessed a firearm may be suppressed. The Defendant contends that his initial stop was invalid and that the subsequent search of his backpack was an unreasonable search in violation of the Fourth Amendment. The Defendant also contends that the evidence elicited at the March 2, 2018 hearing failed to establish that the firearm would have been inevitably discovered during the course of an inventory search at the police precinct. The Government contends that the initial stop was

supported by reasonable suspicion of a misdemeanor violation, that the search of the Defendant's backpack was a valid search incident to an arrest, and that the evidence would have been inevitably discovered during an inventory search at the police precinct.

**DISCUSSION**

1. *Reasonable Suspicion to Conduct a Stop*

It is well established that a police officer may conduct a brief stop where he or she has a reasonable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1 (1968). Reasonable suspicion demands "specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing." U.S. v. Singletary, 798 F.3d 55, 59 (2d Cir. 2015).

An officer has probable cause to make an arrest when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996) (citations omitted). In determining whether probable cause existed, courts must examine the "totality of the circumstances" and "consider those facts available to the officer at the time of the arrest and immediately before it." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

Under the New York Penal Law, a person is guilty of theft of services when, "[w]ith intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of the lawful charge therefor, . . . he obtains or attempts to obtain such service . . . by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay[.]" N.Y. Penal Law § 165.15.

Here, it is clear that the police officers had a reasonable suspicion that a 24 year old was engaging in the theft of services by using a student metrocard, a card which is reserved for students in grades K-12. The officers observed that the Defendant was "older than a typical person" who would use a student metrocard. Tr. 12:21-24. They observed the Defendant scanning the station prior to using the student metrocard, and they observed a signal on the turnstile indicating that a student metrocard was used. These reasonable suspicions were immediately confirmed upon asking the Defendant for his identification, which gave the officers probable cause to lawfully arrest the Defendant. In short, the officers had a particularized and objective basis for suspecting that the defendant was engaged in criminal activity and were correct in their suspicions. United States v. Cancel, 167 F. Supp. 3d 584, 590 (S.D.N.Y. 2016). The officers' brief stop of the Defendant was supported by reasonable suspicion of criminal activity and, therefore, was a valid stop under Terry.

2. *Search Incident to an Arrest*

The well established principle that a warrantless search incident to a lawful arrest is justified can be put into a nutshell.[1] It is one thing to put it into a nutshell it is another thing to keep it there when the search incident to a lawful arrest is of purses, wallets, backpacks, suitcases, and other such appurtenances so closely connected to or attached to the person arrested. The cases addressing this issue are voluminous and impossible to reconcile in any logical or rational way.

The Court is persuaded by the brief but compelling view of Justice Alito in Davis v. United States, 564 U.S. 229, 238 (2011), that

> The basic insight of the Leon line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. When the police exhibit "deliberate,"

---

[1] W. Barton Leach, Perpetuities in A Nutshell, 51 Harv. L. Rev. 638 (1938).

> "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful or when their conduct involves only simple, "isolated" negligence the "'deterrence rationale loses much of its force,'" and exclusion cannot "pay its way."

Davis, 564 U.S. at 238 (internal and parallel citations omitted).

A thorough and comprehensive review of this totally irreconcilable line of cases with a view to divining a coherent, comprehensive theory that would reconcile them need not be undertaken now to decide this case. The unassailable application of the inevitable discovery exception discussed below compels the denial of this motion and makes that undertaking unnecessary.

### 3. *Inventory Searches and the Inevitable Discovery Doctrine*

"Under the inevitable discovery doctrine, evidence that is illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation." United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002). In the inventory search context, the inevitable discovery doctrine allows for the admission of otherwise alleged impermissibly obtained evidence where the government proves: "(1) that the police had legitimate custody of the . . . property being searched, so that an inventory search would have been justified; (2) that when the police in the police agency in question conducted inventory searches, they did so pursuant to 'established' or 'standardized' procedures, and (3) that those inventory procedures would have 'inevitably' led to the 'discovery' of the challenged evidence." Id. (citations omitted); see also Cancel, 167 F. Supp. 3d 584; United States v. Wallace, No. 15 CR 794 (KBF), 2016 WL 4367961, at *10 (S.D.N.Y. Aug. 11, 2016).

At the outset, the police had legitimate custody of the Defendant's backpack because they had placed him under arrest due to his misdemeanor violation and his status as a transit recidivist. The Government has also established that the officers conducted the inventory search pursuant to established and standardized procedures. As the officers testified, the contents of the Defendant's backpack were inventoried pursuant to "NYPD procedures" and "protocol." Tr. 18:25, 19:1-7. This is further supported by the NYPD's official Patrol Guide Procedures as noted in Cancel. 167 F.Supp.3d at 594–97 (finding the existence of a standard NYPD inventory search procedure sufficient to satisfy the second Mendez element based on testimony of the officers involved and NYPD Patrol Guide Procedure 218–13); United States v. White, No. 17-CR-333 (WFK), 2018 WL 799154, at *7 (E.D.N.Y. Feb. 8, 2018). Police may properly remove and inventory this property when the arrested person is to be jailed. Illinois v. Lafayette, 462 U.S. 640, 646 (1983).

Inventory searches are usually conducted at police stations, but the Fourth Amendment does not require that they be conducted at any particular location. See Mendez, 315 F.3d 132, 137, n. 3; United States v. Morillo, No. 08-CR-676 (NGG), 2009 WL 3254431, at *8 (E.D.N.Y. Oct. 9, 2009).

Thus, the Court finds, "with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence [are] resolved in the government's favor." United States v. Heath, 455 F.3d 52, 60 (2d Cir. 2006). It is clear that even if the officers had not searched the Defendant's backpack at the time of his arrest, the firearm in his backpack would have been discovered during an inventory search at the police precinct where he was processed.

## Conclusion

For the foregoing reasons, the Defendant's motion to suppress the evidence of the firearm discovered during his arrest is DENIED.

SO ORDERED.

Dated:     Brooklyn, New York

           April 24, 2018

                                                /s/

                                             I. Leo Glasser